AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Northern District of California

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| FRANCISCO DE-JESUS MORALES ) | Case No. **CR 25-70598-MAG** |
| ) | |
| ) | |
| ) | |
| ) | |
| *Defendant(s)* | |

**FILED**
May 21 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of May 2, 2025 in the county of Santa Clara in the Northern District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 111(a)(1) and (b) | Assault on a federal officer inflicting bodily injury |
| | PENALTIES: Maximum term of imprisonment of 20 years; maximum $250,000 fine; up to 3 years of supervised release; mandatory $100 special assessment fee |

This criminal complaint is based on these facts:

See attached affidavit of HSI SA Nihad Custo.

☑ Continued on the attached sheet.

No Bail Arrest Warrant Requested.

Approved as to form ___/s/___
AUSA Nedrow

Sworn to before me by telephone.

Date: 5/21/2025

City and state: San Jose, California

/s/
*Complainant's signature*

HSI SA Nihad Custo
*Printed name and title*

*Judge's signature*

Hon. Nathanael Cousins, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF COMPLAINT**

I, Nihad Custo, a Special Agent (SA) with Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI), being duly sworn, hereby depose and state the following:

**INTRODUCTION AND AGENT BACKGROUND**

1. This affidavit is submitted in support of a criminal complaint charging Francisco De-Jesus MORALES with one count of assaulting an ICE Enforcement and Removal Operations (ERO) Deportation Officer in San Jose, California, within the Northern District of California, on May 2, 2025 and inflicting bodily injury, specifically by forcibly grabbing, squeezing, pulling, and twisting Deportation Officer C's genitals, in violation of 18 U.S.C. §§ 111(a)(1) and (b).

2. I am a Special Agent with HSI assigned to the San Jose Field Office. I have been employed by HSI since 2017. My training includes completing Basic Inspector training at the Federal Law Enforcement Training Center in Brunswick, Georgia and the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia. I have also received training in techniques for investigating violations of Title 18 of the United States Code. As an HSI agent, I am authorized to investigate violations of United States law and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States. Prior to my current position as a Special Agent with HSI, I was employed as a United States Customs and Border Protection Officer from approximately 2012 to 2017.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and law enforcement

organizations. In conducting this investigation, I have consulted with other HSI Special Agents. These agents have experience in investigating or inspecting and/or applying for and executing multiple arrest warrants and search warrants over the course of their careers.

4. Because this affidavit is submitted for the purpose of obtaining a criminal complaint and arrest warrant, I have not included every fact known to me in this case. Rather, this affidavit is intended to show simply that there is sufficient probable cause for the requested criminal complaint and does not set forth my complete knowledge about this matter.

## APPLICABLE STATUTES

5. This affidavit is submitted in support of a criminal complaint charging a violation of Title 18, United States Code, Sections 111(a)(1) and (b)—assaulting, resisting, or impeding certain officers or employees. 18 U.S.C. Section 111(a)(1) provides, in pertinent part, that "Whoever--(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties" shall be subject to criminal penalties. 18 U.S.C. Section 111(b) provides for an enhanced criminal penalty in circumstances where the commission of the above-described act(s) inflict bodily injury. ICE ERO Deportation Officers fall within the scope of 18 U.S.C. Section 1114, as they are officers and employees of the United States.

## STATEMENT OF PROBABLE CAUSE

### Background

6. I am aware that prior to May 2, 2025, ICE ERO had identified MORALES as an individual who was not lawfully in the United States. A review of MORALES's Alien Registration File ("A-File") indicated that MORALES is a native and citizen of Nicaragua, and that on March 3, 2025, a United States Immigration Judge issued a final order of removal for

2

MORALES following a hearing in Immigration Court in San Francisco, CA. According to ICE ERO records, MORALES failed to appear for the hearing, and the Immigration Judge entered the final order of removal for MORALES in absentia.

    7. Based on the Immigration Court's final order of removal, on May 1, 2025, an authorized immigration officer issued an I-205 warrant providing for MORALES's removal and deportation from the United States. The warrant for removal included, in pertinent part, a command "to take into custody and remove from the United States the above-named alien [MORALES, identified on the warrant], pursuant to law . . ."

    8. On May 1, 2025, ICE ERO, through a contractor employed by ICE, contacted MORALES and asked him to report to an ICE ERO facility on Blossom Hill Road in San Jose, CA (herein, the "Blossom Hill Facility") for the purpose of turning in a phone that immigration authorities had previously provided to MORALES while he was on release pending adjudication of his immigration status. MORALES agreed to report in person to the Blossom Hill Facility on the morning of May 2, 2025.

    9. Based on the above information, on May 2, 2025, members of ICE ERO traveled to the Blossom Hill Facility to execute the warrant for MORALES's removal.

    10. I am aware that ICE ERO routinely executes warrants for removal inside ICE ERO facilities such as the Blossom Hill Facility in San Jose. There are several reasons for this approach. First, when ICE ERO knows the sought-after individual will be at the designated ICE ERO facility at a particular date and time, it can make plans to safely detain the individual. Second, detaining an individual within an ICE ERO facility provides a safer and more controlled environment for a detention than a dynamic public setting, where efforts to detain an individual in public can result in flight of the individual and a risk of harm to members of the public. Third,

a detention inside an ICE ERO facility permits deportation officers direct access to ICE ERO equipment, data, resources, and personnel if unexpected issues arise relating to the execution of the warrant. For these reasons, it is my understanding that detaining an individual within an ICE ERO facility for whom a warrant for removal has issued is a common and preferred practice.

### MORALES's Assault on ICE ERO Deportation Officers on May 2, 2025

11. I have interviewed the three ICE ERO Deportation Officers that took part in the detention of MORALES on May 2, 2025 at the Blossom Hill Facility, as well as other witnesses present at the Blossom Hill Facility on that date. The three deportation officers are identified for purposes of this affidavit as ICE ERO Deportation Officers A, B, and C.

12. All three deportation officers were generally dressed in plain clothes on May 2, 2025, and intended to detain MORALES in as low-key and safe of a manner as possible. Deportation Officers A and C both displayed ICE badges on their belts. While engaging with MORALES, Deportation Officers A and B both wore firearms in hip holsters which were concealed and covered by their shirts. Deportation Officer C also possessed a firearm, but he was not wearing it on his person and had it secured in the office space during the below-described physical contact with MORALES.

13. At approximately 8:30 a.m. on May 2, 2025, MORALES entered the lobby of the Blossom Hill Facility. Signage adjacent to the entrance to the lobby states that the office is associated with both the U.S. Department of Homeland Security and U.S. Immigration and Customs Enforcement (ICE). Consistent with the facility's protocol, MORALES was instructed to sign in at a reception desk. MORALES signed in and identified himself by filling out a check-in form.

14. While MORALES was checking in with a receptionist, Deportation Officer C had

MORALES self-identify, confirming his identity.  MORALES self-identified and filled out the above-described forms in Spanish.

15. Shortly after MORALES's arrival, Deportation Officer A contacted MORALES. Deportation Officer A identified himself as an ICE officer in Spanish.  Deportation Officer A escorted MORALES from the lobby to a conference room inside the facility's internal office space.

16. After entering the conference room, Deportation Officer A put his hands on MORALES' shoulders from behind, told him he was being detained in Spanish, and attempted to sweep MORALES's hands together for the purpose of handcuffing his hands behind his back. MORALES pulled his arms away and swung his left elbow backwards toward Deportation Officer A.  MORALES's elbow struck Deportation Officer A on his left side with sufficient force to knock him off balance and cause him to lose his footing and stumble.

17. MORALES turned away from Deportation Officer A and attempted to flee the conference room.  As MORALES began to exit the conference room, with Deportation Officer A attempting to restrain him, MORALES ran directly into Deportation Officer B, who was approaching the conference room.  Deportation Officers A and B both attempted to "bear hug" MORALES in an effort to restrain him.  MORALES and Deportation Officers A and B fell to the floor.

18. On the floor, MORALES aggressively resisted apprehension and physically struggled with Deportation Officers A and B.  Deportation Officers A and B both yelled "Police, stop resisting!" in Spanish on multiple occasions.  At one point, Deportation Officer A had his arm around MORALES's neck, but MORALES disengaged from the hold and stood up. MORALES lunged and grabbed at Deportation Officer A's waistband, and his hand contacted

Deportation Officer A's firearm, which was in a holster on Deportation Officer A's hip. The firearm was still concealed and covered by Deportation Officer A's shirt. Deportation Officer A turned his body away and the firearm remained secured in the holster.

19. As MORALES turned towards the exit door of the facility, Deportation Officer C arrived in the hallway and grabbed MORALES. All three Deportation Officers and MORALES went to the ground as MORALES continued to vigorously resist apprehension.

20. At one point, MORALES was positioned with his head in Deportation Officer C's chest and his arms and hands were positioned beneath Deportation Officer C's lower body. MORALES forcibly grabbed, squeezed, pulled, and twisted Deportation Officer C's testicles. Deportation Officer C yelled, "Let go of my balls!" or words to that effect.

21. Deportation Officers A and C both punched MORALES in the head and body multiple times, and Deportation Officer A grabbed MORALES's testicles. At that point, MORALES released his grip on Deportation Officer C's testicles. Thereafter, Deportation Officers A and C handcuffed MORALES and MORALES ceased his efforts to resist.

22. After MORALES was handcuffed, Deportation Officer A called 911 for assistance, and the San Jose Police Department and emergency medical personnel responded to the scene. MORALES and the three Deportation Officers all received medical attention.

23. As a result of MORALES's efforts to resist detention, all three Deportation Officers sustained injuries. Some, but not all, of these injuries included the following. Deportation Officer A was diagnosed with a hairline fracture or strain to his left ankle. Deportation Officer B suffered bruising and abrasions to both knees and an abrasion on one hand, and a deep chest contusion in the area of his heart. Deportation Officer C suffered significant bruising to his testicles and back. Deportation Officers B and C have both missed days of work following the

incident while they recovered from their injuries.  MORALES sustained a cut and bruising to his face.

## **CONCLUSION**

24.  Based upon the above-summarized facts, there is probable cause to believe that Francisco De-Jesus MORALES violated 18 U.S.C. §§ 111(a)(1) and (b) by forcibly assaulting ICE ERO Deportation Officer C, specifically by forcibly grabbing, squeezing, pulling, and twisting Deportation Officer C's genitals while he was engaged in the performance of his official duties as he attempted to execute a lawfully issued warrant for MORALES's removal at the Blossom Hill ICE facility in San Jose, CA on May 2, 2025.  MORALES's commission of the above-described acts inflicted bodily injury on each of the deportation officers, including Deportation Officer C.  Accordingly, I respectfully request the issuance of a warrant for the arrest of Francisco De-Jesus MORALES.

I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief.

\_\_\_/s/_____
Nihad Custo
Special Agent, HSI

Sworn to me over the telephone and signed by me pursuant to Fed.R.Crim.P 4.1 and 4(d) on this \_\_21\_ day of May, 2025.



_____
HON. NATHANAEL COUSINS
United States Magistrate Judge