JODI LINKER, Bar No. 230273
Federal Public Defender
Northern District of California
SOPHIA WHITING, Bar No. 324880
Assistant Federal Public Defender
8th Floor - Suite 820
55 South Market Street
San Jose, CA 95113
Telephone: (408) 291-7753
Facsimile: (408) 291-7399
Email: Sophia_Whiting@fd.org

Counsel for Defendant Morales

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CR 25–00163 EJD |
| Plaintiff, | **SENTENCING MEMORANDUM** |
| v. | Court: Courtroom 4, 5th Floor |
| FRANCISCO DEJESUS MORALES, | Hearing Date: November 3, 2025 |
| Defendant. | Hearing Time: 1:30 p.m. |

**INTRODUCTION**

The parties have reviewed the facts of Mr. Morales' case, his personal history and circumstances, and the other applicable 18 U.S.C. § 3553(a) factors to determine a sentence of six months of custody is sufficient in this case. The only difference in the parties' recommendation is that the defense asks the Court to give Mr. Morales credit for all the time he has been in federal custody since his arrest on May 2, 2025. Mr. Morales will have been in custody for six months at the time of his sentencing on November 3, 2025. Therefore, Mr. Morales requests the Court impose a sentence of time served. Mr. Morales expects the government may ask the Court not to give Mr. Morales credit for the first month of his incarceration because it was—technically—in federal immigration custody

as opposed to federal U.S. Marshal custody. This distinction, though, is largely manufactured as it was the government's discretion—not Mr. Morales'—which facility he would be housed in after he was detained after his offense. The circumstances of incarceration were analogous for Mr. Morales. Without the offense conduct at issue in this sentencing, Mr. Morales would have been releasable from immigration custody.

Furthermore, because of Mr. Morales' immigration detainer, Mr. Morales will ultimately be detained for more than six months since he will be transferred into immigration custody after he is sentenced to await his deportation. His deportation could take months. For these reasons, a sentence of time served—the equivalent of six months of incarceration—is the appropriate sentence in this case.

## BACKGROUND

Mr. Morales was unable to complete an interview with U.S. Probation due to timing constraints which would have inhibited Mr. Morales from requesting an appropriate sentence of time served—six months—on November 3, 2025. Mr. Morales expressed his intent to accept responsibility and plead guilty from the outset of the case, but the process for getting the plea agreement approved by the government took longer than anticipated. Mr. Morales inquired with Probation about the possibility of completing an interview once he had pled guilty, but was informed that in order to complete the interview portion, he would need to delay his sentencing past November 3. Defense counsel therefore concluded it would be in the interest of justice to provide the background information that Mr. Morales would have provided to Probation through this sentencing memorandum. Counsel used the same interview form that U.S. Probation uses as a basis for gathering personal background information about Mr. Morales and completed collateral interviews with Mr. Morales' partner. The information provided is consistent with the other information presented in the presentence investigation report (PSR), immigration records, and provided by Mr. Morales' partner. Mr. Morales should not face a higher sentence due to scheduling considerations out of his control when both parties agree that a sentence of six months is appropriate.

Francisco DeJesus Morales was born in 2000 in Leon, Nicaragua. He was raised by a single mother. Mr. Morales does not remember his father, who died tragically when Mr. Morales was just a

young boy. His father died from kidney failure, which is pervasive among young men who are literally worked to death in the sugar cane fields of Nicaragua.[1] The chronic kidney disease is believed to be caused by an unsustainable physical workload, extreme heat stress, and severe dehydration. Pesticide, metal, and toxin exposure are potentially contributing factors as well. *Id*. Mr. Morales never got to see the loving relationship between his mother and father, which he only hears about through family stories.

      Mr. Morales feels lucky, though, for the love he received from his hardworking mother and grandmother. His mother worked multiple jobs to support her family, including cleaning houses, washing clothes, and babysitting for others. Despite her hard work, the family struggled with basic necessities. Mr. Morales did not always have shoes, experienced hunger, and they did not have electricity. They would make light by burning diesel inside of a glass bottle, which caused a fire that got out of control when Mr. Morales was around nine years old. He suffered from serious burns to his feet and lower body, which took a long time to heal and scarred because the family could not afford for him to remain in the hospital. At 14 years old, Mr. Morales began working so he could financially contribute to the household. He started working in agriculture, alongside his studies. He then left school to work full time, first at a vehicle electronics factory (Yazaki) for two years and then at a mani (peanut) factory for two years.

      Although Mr. Morales only completed his primary education, he attended school until he was 14 years old. While still in school, Mr. Morales became inspired by university students who were protesting the Nicaraguan government. As he grew up, Mr. Morales himself engaged in the "Azul y Blanco" political movement, termed for the colors of the Nicaraguan national flag, as opposed to the red and black colors of the current regime. After multiple encounters with government officials threatening Mr. Morales for displaying the national flag—prohibited by the current regime—and after witnessing other protestors being jailed, Mr. Morales fled Nicaragua for the United States to avoid retribution by the government. He also hoped he would be able to provide economic support for his

---

[1] Kate Hodal, *The mystery epidemic striking Nicaragua's sugar cane workers – a photo essay*, The Guardian (November 27, 2020) https://www.theguardian.com/global-development/2020/nov/27/the-mystery-epidemic-striking-nicaraguas-sugar-cane-workers-a-photo-essay#:~:text=For%20decades%2C%20a%20mystery,in%20their%2020s%20and%2030s.

family once he arrived in the United States, since he was unable to support his family on the low wages from his factory jobs in Nicaragua.

Mr. Morales was just 22 years old when he made the arduous two-month journey on foot and bus across Honduras, Guatemala, and Mexico to get to the U.S. border. Mr. Morales presented himself to immigration control when he arrived at the U.S. border. Immigration authorities permitted Mr. Morales to enter the United States through parole and provided him a cell phone for monthly check-ins. Mr. Morales reported as directed by phone, as well as by in-person check-ins as directed, up until his arrest on May 2, 2025.

Life in the United States has not been easy for Mr. Morales, either. He rented a covered porch as his bedroom in a house that he shared with five others. He worked in house painting, landscaping, construction, and any other day labor jobs he could get. He sent as much money as possible to his family in Nicaragua, including to help family members struggling with illness. He never allowed himself to be enticed into illegal activities to make ends meet, because he held himself to a higher moral standard. Mr. Morales has never been arrested or otherwise engaged in illegal activity. Mr. Morales was reporting to immigration authorities as directed on May 2, 2025, when the offense took place.

Mr. Morales thought he was reporting to the office to check on his reporting phone, as he had on multiple occasions in the past without issue. What Mr. Morales did not know is that an immigration court had ordered him removed in absentia and issued an arrest warrant to carry out the removal. The reason Mr. Morales did not know this is he had never been advised that he had an immigration court date nor that he had been ordered removed, despite being in contact with immigration authorities. Immigration's oversight was they sent the court paperwork to the wrong mailing address—an address Mr. Morales had previously corrected with the office. Despite having the immigration phone and the ability to contact Mr. Morales directly, no one had informed him of the court date or removal order. After Mr. Morales' arrest, immigration counsel filed a motion to re-open based on these facts and the immigration court re-opened his case on this basis. A copy of the motion has been provided to the government and U.S. Probation, and Mr. Morales' case remains on the immigration court calendar. Mr. Morales' unawareness of any immigration court date or removal

order underlies his shock, confusion, and fear when plain-clothed officers began grabbing his arms behind his back and arresting him on May 2, 2025.

Mr. Morales has never been a violent person and holds himself to high moral standards. He deeply regrets that his fear and shock overwhelmed him at the ERO Office, and that his actions caused the victims in this case to be injured. While his purpose was to flee the office and get himself to safety, in that pursuit he resisted and assaulted the ICE officers tasked with detaining him. For six months he has reflected on his flight and fight response to the situation, and feels terrible about the way his actions impacted these officers. Mr. Morales asked counsel to provide the following statement to the Court, which was translated with the assistance of a certified interpreter:

> I am very regretful for what I have done. With all my heart I am sorry. I apologize for each person that has been harmed by what I did, it was not my purpose to hurt anyone at that time it all happened very fast. I do believe I am a good person, I do not know what happened to me at that moment but I accept responsibility for my wrongdoing and I take responsibility for everything that happened. Each day I try to be a better person and I hope these people can forgive me for hurting them.

This is not conduct Mr. Morales would ever repeat—he has spent many days crying in remorse and fear about this case. Mr. Morales' conduct will continue to have severe consequences as he is now ineligible for immigration relief for which he may have previously qualified. He is expected to be deported to Nicaragua when his sentence is complete.

## DISCUSSION

### I. The sentencing guidelines (18 U.S.C. § 3553(a)(4))

The parties agree with the Sentencing Guidelines as set forth in the PSR of Total Offense Level 13 and Criminal History Category I. The Sentencing Guidelines are therefore 12 to 18 months.

Although the Court must remain mindful of the Guideline recommendation, the range established by the Sentencing Guidelines is not presumptively reasonable and it cannot be given any more or less weight than any other factor listed in section 3553(a). *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court's paramount concern is to "'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or

SENTENCING MEMORANDUM
*MORALES*, CR 25–00163 EJD

5

vocational training, medical care, or other correctional treatment." *Carty*, 520 F.3d at 991.

Under the Sentencing Guidelines and the applicable 18 U.S.C. § 3553(a) factors discussed below, Mr. Morales respectfully requests that the Court impose a sentence of time served—six months—and three years of supervised release.

## II. The nature and circumstances of the offense and circumstances of defendant warrant a sentence of time served (18 U.S.C. § 3553(a)(1))

Mr. Morales' offense was not premeditated or demonstrative of his character. His actions arose out of an extreme circumstance of shock, confusion, and fear after a plain-clothed officer began to unexpectedly grab his arms and arrest him, when he believed he was reporting for an uneventful check-in with immigration. Mr. Morales was attempting to flee what he incorrectly thought was an unlawful arrest, when he was tackled to the ground and grabbed by the neck and head by three officers. He takes responsibility that during this ensuing scuffle, he committed assault. He also acknowledges that the officers involved were doing their jobs and is deeply regretful that his actions in this reaction of fear caused anyone to be injured. Mr. Morales has never been in trouble with the law before—putting aside the government threats he received in Nicaragua for peaceful protest—so being incarcerated for six months has been incredibly stressful. He does not provide this information to attempt to excuse his actions but rather to demonstrate that this was an isolated incident and six months is a significant penalty for his actions in those moments of fear.

## III. Mr. Morales' personal history warrants a sentence of time served (18 U.S.C. § 3553(a)(1))

Mr. Morales faced an incredibly difficult life in Nicaragua, marred by the untimely death of his father, persistent financial insecurity, and political fear and instability. He sought refuge in the United States and followed the correct steps—he presented himself to immigration authorities, reported as directed, and followed the laws of the United States. In the United States, Mr. Morales faced many obstacles, but he never allowed those obstacles to take him off of his track to work hard, support his family, and comply with the law. U.S. Probation acknowledges that they did not have a benefit of considering Mr. Morales' personal history due to the lack of interview, so it is understandable that they did not consider an additional downward variance in light of Mr. Morales' personal history, but a variance is appropriate and is reflected in the government's recommendation.

SENTENCING MEMORANDUM
*MORALES*, CR 25–00163 EJD

6

### IV. Respect for the law and deterrence are accomplished with a sentence of time served (18 U.S.C. § 3553(a)(2)(A)-(B))

Both individual and general deterrence are accomplished with a sentence of time served. Individually, Mr. Morales has been completely scared straight from ever disobeying law enforcement or other government officials in this country. He understands now that he will be in a better position to comply first and raise his legal concerns later, as would have been tremendously beneficial to him in this case since he could have had a path to legal status once he fixed Immigration's error.

This also accomplishes general deterrence against non-compliance with government officials, since six months is a weighty sentence especially for individuals with no prior criminal history.

### V. Additional time in U.S. Marshal custody is not necessary to protect the public or provide correctional treatment in the most effective manner ((18 U.S.C. § 3553(a)(2)(C)-(D))

Mr. Morales is not a danger to the public as he has never previously been violent or engaged in illegal activities. This situation was born of the circumstances and, as discussed above, Mr. Morales has deeply learned his lesson from this experience. Mr. Morales does not struggle with any mental health, substance abuse, or physical health issues that call for additional correctional treatment. Furthermore, Mr. Morales will be placed in immigration custody and deported after his sentence is complete, so a sentence of time served does not result in him being released back into this community. If under any circumstances Mr. Morales were to be in the United States, he would be subject to the conditions of supervised release which provide public protection and treatment as appropriate.

### VI. A sentence of time served serves the interests of justice

Mr. Morales has been in custody since his arrest on May 2, 2025. He would have been eligible for release from immigration custody but for this arrest. He could have been criminally arrested immediately and placed in local custody, which was discussed at the scene, or placed in U.S. Marshal custody much sooner based on a federal arrest. The decision to have him detained in immigration custody was discretionary while the case was being charged federally, and Mr. Morales was charged by complaint by May 21, 2025. Dkt. 1. He was then discretionarily transferred into U.S. Marshal custody on June 3, 2025. Since the parties agree that a sentence of six months is appropriate, it is in the interest of justice to consider the month Mr. Morales was in federal immigration custody after his

arrest when fashioning the appropriate sentence.

Furthermore, if the Court decides to sentence Mr. Morales to six months of custody as opposed time served, he could end up overserving his sentence in U.S. Marshal custody due to logistical constraints. Mr. Morales would have less than one month remaining on his sentence and the Bureau of Prison would need to receive Mr. Morales' judgement, calculate his credits, and determine his release date before he could be released to immigration custody. This process can take more than one month under normal circumstances, and may be further delayed by the government shutdown and associated furloughs. To avoid the additional time, resources, and the potential of an overserved sentence if the Court imposes a sentence of six months, a sentence of time served—which is the equivalent of six months in federal custody—is appropriate.

Even after his sentence is complete, Mr. Morales will be transferred to immigration custody and remain in federal custody until his deportation.

## CONCLUSION

For the aforementioned reasons, Mr. Morales respectfully requests the Court sentence him to time served—equivalent to six months of total custody—followed by three years of supervised release with conditions recommended by U.S. Probation.

Dated: October 27, 2025

Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

　　　　　　/S
SOPHIA WHITING
Assistant Federal Public Defender